T.C. Summary Opinion 2003-20


UNITED STATES TAX COURT


MARIA G. PELAYO, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

JORGE PELAYO, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 7282-01S, 7283-01S.    Filed March 14, 2003.


Maria G. Pelayo, pro se in docket No. 7282-01S.

Jorge Pelayo, pro se in docket No. 7283-01S.

<u>Karen Nicholson Sommers</u>, for respondent.


POWELL, <u>Special Trial Judge</u>:  These consolidated cases[1]

were heard pursuant to the provisions of section 7463[2] of the

---

[1]  These cases were consolidated for purposes of trial, briefing, and opinion because they involve common questions of fact and law arising from the alleged marital separation of petitioners.

[2]  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the year in issue.

Internal Revenue Code in effect at the time the petitions were filed.  The decisions to be entered are not reviewable by any other court, and this opinion should not be cited as authority.

Respondent determined a deficiency of $2,970 in the 1998 Federal income tax of petitioner Maria G. Pelayo (Mrs. Pelayo) at docket No. 7282-01S and a deficiency of $1,987 in the 1998 Federal income tax of petitioner Jorge Pelayo (Mr. Pelayo) at docket No. 7283-01S.  The issues are (1) whether either petitioner is entitled to file an individual 1998 Federal income tax return using head of household filing status, and (2) whether either petitioner is entitled to an earned income credit. Petitioners resided in Calexico, California, at the time the petitions were filed.

## Background

The facts may be summarized as follows.  Throughout 1998, petitioners were legally married.  In May of that year, petitioners allegedly separated.  Petitioners did not enter into a formal separation agreement.  Mrs. Pelayo and petitioners' two youngest minor children, Jorge (born 1987) and Jacqueline (born 1984), remained at a residence at 947 Fifth Street, Calexico, California (Fifth Street residence).

For approximately 2 to 3 weeks after the separation, Mr. Pelayo lived at his sister's residence in Calexico.  Mr. Pelayo then moved to a motel in Los Banos, California, where he

temporarily worked as an agricultural laborer.  Mr. Pelayo's employer, The Growers Co., Inc. (Growers), paid all the expenses he incurred at the motel.  Mr. Pelayo resided at the motel until July or August of 1998, when he returned to his sister's residence.  Mr. Pelayo resided with his sister until December of 1998.  He then rented a home on Second Street in Calexico (Second Street residence).  Petitioners reunited in January of 1999, and Mrs. Pelayo, Jorge, and Jaqueline moved into the Second Street residence.

Petitioners' oldest daughter, Maria (born September 1980), stayed with Mr. Pelayo from May or June of 1998 until September of that year when she returned to high school in Calexico.  At least during part of this time she was also working for Growers.  Maria resided with Mrs. Pelayo at the Fifth Street residence for the first 5 or 6 months of 1998 and the last 3 months of 1998.

While Mr. Pelayo was working in Los Banos, he gave Mrs. Pelayo approximately $70-80 weekly for her household expenses.  Additionally, Mr. Pelayo paid the $400 monthly rent for the Fifth Street residence.

Mr. and Mrs. Pelayo filed separate 1998 Federal income tax returns, each claiming head of household filing status.  Mrs. Pelayo claimed dependency exemption deductions for Jorge and Jacqueline.  Mr. Pelayo claimed a dependency exemption deduction for Maria.  Each petitioner claimed an earned income credit based

on the children.

In the notices of deficiency, respondent adjusted each petitioner's filing status to married filing separately. As a result, respondent disallowed the earned income credits claimed by petitioners.

## Discussion

As relevant herein, a taxpayer qualifies for head of household filing status if he or she is (1) not married at the close of the taxable year, and (2) maintains as his or her home "a household which constitutes for more than one-half of such taxable year the principal place of abode" of a son or daughter. Sec. 2(b)(1)(A).[3]

A married taxpayer qualifies as unmarried for head of household filing purposes if (1) the taxpayer files a separate tax return, (2) the household is, for more than one-half of the taxable year, the principal place of abode of the taxpayer's child for whom the taxpayer would be entitled to claim a dependency exemption, (3) the taxpayer "furnishes over one-half of the cost of maintaining such household during the taxable year," and (4) the taxpayer's spouse is not a member of the household during the last 6 months of the taxable year. Sec.

---

[3] The analysis of sec. 2(b) can be addressed via the marital status of petitioners under sec. 7703(b) or the requirement to maintain a household under sec. 2(b). The result of either analysis is the same; however, the parties addressed the marital status of petitioners at trial, and we do the same here.

7703(b).

The costs of maintaining a household are the expenses incurred for the mutual benefit of the occupants, such as "property taxes, mortgage interest, rent, utility charges, upkeep and repairs, property insurance, and food". Sec. 1.7703-1(b)(4), Income Tax Regs. Specifically, if a taxpayer does not own or pay the rent for a house, he or she is not maintaining a household. Keegan v. Commissioner, T.C. Memo. 1997-511.[4]

Mrs. Pelayo did not substantiate that she paid more than half of the costs of the Fifth Street residence.[5] Mrs. Pelayo submitted copies of utility bills she paid; Mr. Pelayo, however, paid the monthly rent and advanced money every week to her for household expenses. Based on the evidence before us, we conclude that Mrs. Pelayo did not provide more than half of the cost of maintaining the household. As a result, under section 7703(b) Mrs. Pelayo was married in 1998 and is not entitled to head of household filing status. Respondent's determination that Mrs. Pelayo's proper filing status for 1998 is married filing separate

---

[4] In Keegan v. Commissioner, T.C. Memo. 1997-511, this Court considered the taxpayer's qualification to file under the head of household status. Section 2(b) provides that "an individual shall be considered as maintaining a household only if over half of the cost of maintaining the household during the taxable year is furnished by such individual." Due to the similar language in secs. 2(b) and 7703(b)(2), we find this case applicable here.

[5] Sec. 7491(a), concerning burden of proof, has no bearing on the underlying issue.

is sustained.

Turning next to Mr. Pelayo, we find that, for purposes of section 7703(b), he was married in 1998 because Maria resided with him only for approximately 4 months during 1998, and, therefore, he did not maintain "as his home a household which constitutes for more than one-half of the taxable year the principal place of abode of a child" as required by section 7703(b)(1).[6]  See also sec. 2(b)(1)(A).  Mr. Pelayo, therefore, is not entitled to head of household filing status for 1998, and respondent is sustained in determining that Mr. Pelayo's proper filing status is married filing separate.

Section 32(a) provides for an earned income credit in the case of an eligible individual.  Section 32(d) provides that "In the case of an individual who is married (within the meaning of section 7703), this section shall apply only if a joint return is filed for the taxable year under section 6013."  We have concluded that petitioners were married in 1998, and no joint return was filed for that year.  As a result, petitioners are not entitled to the claimed earned income credits.

We recognize that petitioners may feel that they have been caught in somewhat of a "Catch 22" situation.  But, this arises from their own structuring of their living arrangements.  While

---

[6]   We also point out that it is highly questionable whether Mr. Pelayo maintained any household during 1998.

it is not totally clear, we suspect that this structuring was prompted by an attempt to obtain greater earned income credits by a connived separation. This is the choice that petitioners made, and it is the choice that they must live with.

Reviewed and adopted as the report of the Small Tax Case Division.

Decisions will be entered for respondent.